**Bakayoko YACOUBA, Petitioner**

v.

**DISTRICT DIRECTOR, ICE, et al., Respondents.**

**Civil No. 3:CV–08–1749.**

United States District Court, M.D. Pennsylvania.

Dec. 18, 2008.

Bakayoko Yacouba, York, PA, pro se.

Dennis Pfannenschmidt, U.S. Attorney's Office, Harrisburg, PA, Nicole R. Prairie, Department of Justice, Civil Division, Washington, DC, Timothy S. Judge, U.S. Attorney's Office, Scranton, PA, for Respondents.

## MEMORANDUM

RICHARD P. CONABOY, District Judge.

### Background

This habeas corpus petition pursuant to 28 U.S.C. § 2241 was filed on September 22, 2008 by Bakayoko Yacouba. Petitioner is a detainee of the Department of Homeland Security, Immigration and Customs Enforcement ("ICE") who is presently confined at the York County Prison, York, Pennsylvania. The required filing fee was not paid until October 6, 2008. Service of the petition was ordered the next day.

A response to the petition was submitted on October 27, 2008. Petitioner filed a traverse on November 6, 2008. Accordingly, this matter is now ripe for consideration. For the reasons outlined herein, the petition will be denied.

Named as Respondents are Warden Thomas Hogan of the York County Prison, District Director of the ICE, the United States Department of Homeland Security, and the Attorney General of the United States.

Yacouba states that he is native and citizen of Ivory Coast who was admitted into the United States on September 20, 2004. *See* Doc. 1, p. 16. Petitioner adds that he is "a long time Lawful Permanent Resident (LPR) who was allowed to enter the United States legally." *Id.* at p. 6. A final order of deportation *in absentia* was

entered in his case on December 21, 2007. Thereafter, he was taken into custody by ICE on February 25, 2008 and is presently confined at the York County Prison.

Yacouba's present petition contends that his continued detention by ICE is unjustified, improper under the Immigration and Nationality Act ("INA"), and violates due process under the principles established by the United States Supreme Court in *Zadvydas v. Davis,* 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001). Petitioner adds that he has exhausted all available administrative remedies and it is unlikely that ICE will be able to facilitate his removal to the Ivory Coast within the reasonably foreseeable future. Yacouba seeks his immediate release under "reasonable bond." Doc. 1, p. 25.

Respondents assert that Yacouba, a native of the Ivory Coast, entered the United States from Burkina Faso on or about September 20, 2004 using a passport in the name of Adama Drabo.[1] Following his arrival Petitioner also represented that he was a citizen of Ivory Coast, however, because it could not be verified that Yacouba was a native of Ivory Coast, "efforts have consequently focused on returning Petitioner to Burkina Faso." Doc. 13, p. 3.

Respondents acknowledge that a final order of removal *in absentia* was entered against Yacouba on December 21, 2007 and that an appeal of that decision is pending before the Board of Immigration Appeals (BIA). With respect to Petitioner's background while in this country, Respondents note that in 2006 Petitioner was convicted of disorderly conduct. They add that during 2007, Yacouba was convicted of criminal possession of a weapon and in 2008, he

---

1. In his traverse, Petitioner acknowledges that he entered the United States through use of a falsified passport in the name of Adama Drabo of Burkina Faso. *See* Doc. 14, p. 1.

was arrested on charges of criminal possession of a weapon and aggravated unlicensed operation of a motor vehicle. Those charges are still pending.

The response next asserts that since being taken into ICE detention the Government has attempted to remove Petitioner to Burkina Faso on two separate occasions (June 16, 2008 and August 5, 2008). On both dates, Petitioner actively resisted deportation by refusing to board airplanes which would return him to Burkina Faso. Based upon the extent of Petitioner's noncooperation, his case was referred to the United States Attorney General's office for possible criminal prosecution. The result of that referral is unknown.

Based upon those facts, Respondents assert that Petitioner is not entitled to release pending removal because he has failed to establish that there is no significant likelihood of removal in the reasonably foreseeable future. Respondents add that the ICE's decision to continue Petitioner's detention is appropriate. In light of various factors including his fraudulent entry into this country; criminal conduct while in the United States; disciplinary misconduct while in ICE custody; and failure to cooperate in the removal process, they conclude that there are adequate reasons to support Yacouba's continued detention.

### Discussion

As noted above, Respondents assert that Yacouba has failed to argue or produce any evidence which would establish that his removal will not occur within the reasonably foreseeable future. Furthermore, they note that ICE has made two (2) good faith efforts to effectuate Petitioner's removal.

The United States Supreme Court has clearly recognized that indefinite detention of aliens facing removal is not permissible.

*See Zadvydas,* 533 U.S. at 689, 121 S.Ct. 2491. To establish uniformity in the federal courts, the Supreme Court recognized six (6) months as being a "presumptively reasonable period of detention." *Id.* Respondents acknowledge that in Yacouba's case, the "presumptively reasonable period of detention lapsed on or around August 25, 2008." Doc. 13, p. 6. They add that Petitioner's detention is not mandatory and he has been provided with "two individualized post-order custody reviews" in accordance with 8 C.F.R. § 241.4. Doc. 13, p. 7.

The Supreme Court in *Zadvydas* added that not every alien must be released after six (6) months; but, rather, an alien may still be detained beyond six (6) months "until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

In response to *Zadvydas,* ICE adopted 8 C.F.R. § 241.13. This regulation "establishes special review procedures for those aliens who are subject to a final order of removal and are detained under the custody review procedures provided at § 241.4 after the expiration of the removal period, where the alien has provided good reason to believe there is no significant likelihood of removal **to the country to which he or she was ordered removed, or to a third country,** in the reasonably foreseeable future." 8 C.F.R. § 241.13(a)(emphasis added)

A declaration under penalty of perjury by York Detention Facility Deportation and Detention Officer Onix Rivera details that Petitioner entered this country via a visa which he obtained from the United States Embassy in Burkina Faso. Following his arrival in this country, Rivera states that Yacouba was convicted of disorderly conduct on October 4, 2006 and possession of a weapon on August 14, 2007.

Petitioner also faces criminal charges including aggravated unlicensed operation of a motor vehicle and weapons possession which have been pending since February 18, 2008. *See* Doc. 13, Exhibit A, ¶ 8. Rivera adds that Yacouba has received multiple disciplinary infractions since being taken into ICE custody. Furthermore, Rivera states that Petitioner has no significant employment or family ties in the United States.

Rivera notes that on June 16, 2008 and August 5, 2008, attempts were made to remove Petitioner to Burkina Faso, however, on both dates Petitioner became disruptive and refused to board either of his scheduled flights.

A review of documents submitted by Respondents establishes that the December 21, 2007 order of removal directed that Petitioner be removed to the Ivory Coast. *See* Doc. 13, Exhibit C. A May 27, 2008 ICE decision to continue detention similarly identifies Yacouba as being a citizen of the Ivory Coast. *See id.*, Exhibit I. Likewise, the June 19, 2008 travel document issued by the Burkina Faso Embassy also listed Petitioner as being an Ivory Coast native. *See id.*, Exhibit G.

Agent Rivera's declaration indicates that an Ivory Coast birth certificate and expired passport surrendered by Yacouba were sent to the Ivory Coast for authentication but those documents could not be verified.

In his reply, Petitioner states that he was born in Ivory Coast. However, Yacouba indicates that he and his family were forced to flee their country after they experienced "problems" in "my country (Ivory Coast)." Doc. 14, p. 2. Attached to his reply is a copy of an asylum petition wherein Petitioner describes those prob-

lems as including the killing of his father and a sexual assault of his sister by security forces. His asylum petition further asserts that he will be tortured and/or killed if returned to the Ivory Coast. His asylum petition also acknowledges that Yacouba and his family fled to Burkina Faso from the Ivory Coast and he left for the United States from that country.

However, Petitioner also argues that he will be tortured if sent to Burkina Faso. His reply asks that he be allowed to remain in the United States. Based upon Petitioner's submissions, it is apparent that he does not wish to be sent to either Ivory Coast or Burkina Faso and would prefer to remain in this country. It is equally clear that because Petitioner sought refuge in Burkina Faso after fleeing Ivory Coast, that country would appear to be a more logical destination for his removal. However, any issue relating to the legality of Yacouba's removal is not before this Court.[2] Rather, this Court is limited to addressing the question of whether Yacouba may be released under reasonable terms of supervision pending removal.

██ Under *Zadvydas*, Petitioner bears the initial burden of showing that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701, 121 S.Ct. 2491. It is not necessary to show that removal is impossible. *Shefqet v. Ashcroft*, 2003 WL 1964290 *4 (N.D.Ill. April 28, 2003). Since ICE has attempted to remove Petitioner on two (2) separate dates but was unable to do so solely because of Yacouba's non-cooperation, Petitioner has failed to satisfy his initial burden of showing that there is

**2.** This Court would hope that the BIA clarifies the issue of whether Petitioner should be re-

moved to Ivory Coast, Burkina Faso, or either of those countries.

no reasonable likelihood of his removal in the foreseeable future.

Furthermore, in *Demore v. Kim,* 538 U.S. 510, 123 S.Ct. 1708, 1714, 155 L.Ed.2d 724 (2003) the Supreme Court stated that detention pending completion of removal proceedings is constitutionally permissible as it "serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." *Id.* at p. 1720.

Based upon Yacouba's criminal arrests and convictions during his relatively short stay in this country; his institutional misconduct while in ICE custody; his failure on two (2) separate dates to cooperate in his attempted removal to Burkina Faso (which based upon Petitioner's own submissions appears to be a safer destination than Ivory Coast); his lack of substantial ties within the United States; and his expressed intention to remain in this country, it is the conclusion of this Court that Petitioner would pose a flight risk if granted release pending removal.

In conclusion, since Yacouba has already been twice issued travel documents by Burkina Faso, it cannot be determined that Petitioner's removal could not be achieved within the reasonably foreseeable future. Second, based upon his conduct while in this country, there are adequate reasons for the ICE to continue his detention. The petition for writ of habeas corpus will be denied. An appropriate order will enter.

AND NOW, THEREFORE, THIS 18th DAY OF DECEMBER, 2008, IT IS HEREBY ORDERED THAT:

1. The petition for writ of habeas corpus is DENIED.

2. The Clerk of Court is directed to CLOSE the case.